## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| BRIAN HAWKINS<br>8970 Tawes Street<br>Fulton, MD 20759 | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )   Civil Action No. 1:17-cv-2575-KBJ |
| ROBERT WILKIE<br>Secretary, U.S. Dep't of Veterans Affairs,<br>810 Vermont Avenue, NW<br>Washington, D.C. 20420 | )<br>)<br>)<br>)<br>) |
| U.S. DEP'T OF VETERANS AFFAIRS,<br>810 Vermont Avenue, NW<br>Washington, D.C. 20420 | )<br>)<br>)<br>) |
| THE UNITED STATES OF AMERICA | )<br>) |
| Defendants. | )<br>)<br>)<br>) |

### SECOND AMENDED COMPLAINT

Plaintiff Brian Hawkins hereby amends his complaint of December 19, 2017, and First Amended Complaint of June 29, 2018, pursuant to the Court's Minute Order of September 16, 2019, as follows:

### NATURE OF ACTION

1. Hawkins seeks judicial review of U.S. Department of Veterans Affairs' ("VA") and former VA Secretary David Shulkin's September 13, 2017 decision to remove Hawkins from the federal service, which continues to adversely affect Hawkins.

2. VA and Shulkin deprived Hawkins of a property interest without due process in violation of the Due Process Clause of the Fifth Amendment to the U.S. Constitution.

3. VA and Shulkin deprived Hawkins of a liberty interest in violation of the Due Process Clause of the Fifth Amendment to the U.S. Constitution.

4. VA and Shulkin deprived Hawkins of his property in the form of his compensation and benefits for his employment from September 16, 2017, through June 12, 2019, without due process in violation of the Fifth Amendment to the U.S. Constitution.

5. VA and the United States took Hawkins's private property in the form of his full compensation and benefits for his employment from September 16, 2017, through June 12, 2019, without just compensation in violation of the Fifth Amendment to the U.S. Constitution.

6. The September 13, 2017 decision to remove Hawkins from the federal service must be set aside pursuant to 38 U.S.C. § 713 (2017), because it was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with a provision of law; obtained without procedures required by a provision of law having been followed; and unsupported by substantial evidence.

7. Hawkins seeks, pursuant to the Freedom of Information Act ("FOIA"), codified at 5 U.S.C. § 552(a)(4)(B), to compel disclosure of the information he requested pursuant to the Freedom of Information Act, sent to and received by Defendant U.S. Department of Veterans Affairs on October 19, 2017, that the VA has improperly withheld.

**PARTIES**

8. Plaintiff Brian Hawkins, is a citizen of the United States and resides at 8970 Tawes Street, Fulton, MD 20759. Hawkins was a Senior Executive Service employee of the U.S. Department of Veterans Affairs, and served as Director of the Washington, D.C. VA Medical Center

located at 50 Irving Street, NW, Washington, D.C. 20422, from September 2011, to September 16, 2017, when VA removed him from the federal service.

9.  Defendant, Robert Wilkie, is a Principal Officer of the United States and is being sued in his official capacity as the Secretary of the U.S. Department of Veterans Affairs, located at 810 Vermont Avenue, NW, Washington, D.C. 20420.

10. Defendant, U.S. Department of Veterans Affairs, is an executive agency and division of the United States Government, with its headquarters located at 810 Vermont Avenue, NW, Washington, D.C. 20420.

11. Defendant, the United States of America, is the federal government, who is a proper Defendant pursuant to 28 U.S.C. §§ 1367, 1491(a)(1) for Hawkins's claim for monetary relief arising out of the Takings Clause of the Fifth Amendment to the U.S. Constitution.

## JURISDICTION AND VENUE

12. This Court has jurisdiction to review VA's action to remove Hawkins from the Senior Executive Service and from the federal service pursuant to 38 U.S.C. § 713(b)(5) and 28 U.S.C. § 1331.

13. Hawkins's request for judicial review of VA's action to remove him from the federal service was timely brought within six years of the action pursuant to 28 U.S.C. § 2401(a).

14. This Court has jurisdiction pursuant to 28 U.S.C. § 2201, to declare VA's violation of Hawkins's constitutional and statutory rights.

15. This Court has jurisdiction pursuant to 28 U.S.C. § 1361, to compel Defendant U.S. Department of Veterans Affairs to initiate and/or process payment to Hawkins for the full compensation and benefits he is owed.

16. This Court has jurisdiction pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331, to adjudicate FOIA complaints.

17. This Court is the proper venue for this action pursuant to 28 U.S.C. §§ 1367, 1391(e)(1), as all or a substantial part of the events or omissions giving rise to each of Hawkins's claims occurred in Washington, D.C.

## FACTUAL ALLEGATIONS

## FACTS RELATED TO EMPLOYMENT-RELATED CLAIMS

18. Hawkins began working as a career employee in the federal civil service for the VA as a GS-4 clerk/typist at the Hines VA Medical Center in 1992.

19. Hawkins continued working for VA in positions of increasing responsibility, grade, and pay, and was hired into a career position of the Senior Executive Service at the Agency in 2010, as Director of the Muskogee VA Medical Center.

20. As a career member of the Senior Executive Service, Hawkins had a property interest in his continued employment.

21. In September 2011, VA selected Hawkins as Director of its Washington, D.C. VA Medical Center ("DCVAMC"), the Senior Executive Service position Hawkins continued to hold until he resigned from the federal service on June 12, 2019.

22. During his entire tenure as a Senior Executive, including as Director of the DCVAMC, Hawkins's employment was subject to 5 U.S.C. § 7543, which provides that VA can remove a Senior Executive for "misconduct, neglect of duty, malfeasance, or failure to accept a directed reassignment or to accompany a position in a transfer of function." 5 U.S.C. § 7543(a).

23. A Senior Executive pursuant to 5 U.S.C. § 7543 has a right to appeal the removal to the Merit Systems Protection Board ("MSPB") for a hearing before an Administrative Judge for *de novo*

review, under a preponderance of the evidence standard of proof. *See* 5 U.S.C. §§ 7543(d), 7701; 5 C.F.R. § 1201.

24. On August 7, 2014, the Veterans Access, Choice and Accountability Act of 2014 ("VACAA") became law. Codified at 38 U.S.C. § 713 (2014), the VACAA allowed VA to remove a Senior Executive "if the Secretary determines the performance or misconduct of the individual warrants such removal." 38 U.S.C. § 713(a)(1) (2014). Senior Executives removed under 38 U.S.C. § 713 (2014) had the right to appeal VA's removal decision to the MSPB for a hearing before an Administrative Judge under 5 U.S.C. § 7701, for *de novo* review under a preponderance of the evidence standard of proof. 38 U.S.C. § 713(e)(1) (2014); 5 C.F.R. § 1210.18(a) (2014).

25. On May 31, 2016, Attorney General Loretta Lynch notified Congress, pursuant to 28 U.S.C. § 530D, that the U.S. Department of Justice would not defend 38 U.S.C. § 713(e)(2) (2014) against an Appointments Clause challenge in *Helman v. Dep't of Veterans Affairs*, No. 15-3086 (Fed. Cir.).

26. In June 2016, VA suspended use of 38 U.S.C. 713 (2014) to discipline Senior Executives.

27. After June 2016, 5 U.S.C. § 7543 continued operating as a legal mechanism to remove VA Senior Executives.

28. Dr. David Shulkin was confirmed by the U.S. Senate as Secretary of the VA on February 13, 2017, and subsequently sworn into office.

29. Shulkin served at the pleasure of the President of the United States.

30. Shulkin did not have a property interest in his continued employment as VA Secretary.

31. Beginning in or around February 2017, and continuing, Shulkin began telling VA employees serving as proposing officials and deciding officials on pending adverse actions against

5

tenured, career VA employees, to remove such employees from the federal service for political purposes.

32. These statements and actions by Shulkin described in ¶31 violated these VA employees' due process rights.

33. In or around February 2017, and thereafter, VA Chief of Staff Vivieca Wright-Simpson told Deputy Under Secretary for Health Operations and Management Steve Young to effectuate the removal of the then-Director of the San Juan VA Medical Center from the federal service under 5 U.S.C. § 7543, for which Young was to be the deciding official.

34. These statements and actions by Wright-Simpson described in ¶33 violated the Director's due process rights.

35. In or around February 2017, and thereafter, then-Acting Under Secretary for Health Dr. Poonam Alaigh told Young to effectuate the removal of the then-Director of the San Juan VA Medical Center from the federal service under 5 U.S.C. § 7543, for which Young was to be the deciding official.

36. These statements and actions by Alaigh described in ¶35 violated the Director's due process rights.

37. VA employees reported to VA human resources personnel in 2017, that Shulkin was inappropriately directing them to remove employees in violation of those employees' due process rights.

38. ████████████████████████████████████████████████████

   ████████████████████████████████████████████

39. The aforementioned complaints in ¶¶37-38 were not attorney-client privileged communications.

40. ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████

41. The aforementioned statements in ¶40 were not attorney-client privileged communications.

42. In Spring 2017, as reported by the Wall Street Journal in January 2018: [in a meeting] with representatives of veterans' groups and Veterans Affairs Secretary David Shulkin, [President Donald] Trump criticized the slow pace of terminating federal employees, particularly at the VA. "You just need to start firing people," he told Mr. Shulkin. "Let them sue us. I don't care if they sue us."

43. ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████

44. Shulkin's aforementioned statement in ¶43 was not an attorney-client privileged communication.

45. ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████

46. Flanz's aforementioned statement in ¶45 was not protected by the attorney-client privilege.

47. In or around April and May 2017, Wright-Simpson told Mr. Michael Culpepper, the then Executive Director of OAR, the VA office responsible for advising on and processing

disciplinary actions against VA Senior Executive Service members and other VA senior leaders, that Shulkin wanted Hawkins removed from the federal service quickly.

48. Wright-Simpson told Culpepper in or around April and May 2017, that Shulkin wanted Hawkins removed from the federal service for political and media purposes.

49. In or around April 2017, before either OAR or OIG completed investigating whether Hawkins committed misconduct, Shulkin told OAR investigator Sylma Vargas that he wanted Hawkins removed from the federal service.

50. In or around April 2017, before either OAR or OIG completed investigating whether Hawkins committed misconduct, Shulkin told multiple OAR employees that he wanted Hawkins removed from the federal service.

51. In or around April 2017, before either OAR or OIG completed investigating whether Hawkins committed misconduct, Wright-Simpson told Vargas that Shulkin wanted Hawkins removed from the federal service.

52. In or around April 2017, before either OAR or OIG completed investigating whether Hawkins committed misconduct, Wright-Simpson told one or more OAR employees that Shulkin wanted Hawkins removed from the federal service for political and media purposes.

53. On April 12, 2017, the OIG issued an Interim Summary Report on matters related to the DCVAMC Logistics Department.

54. On April 12, 2017, VA temporarily reassigned Hawkins to administrative duties at VA Central Office.

55. In or around April 2017, after OIG issued its aforementioned Interim Summary Report, Wright-Simpson instructed OAR personnel to remove Hawkins from the federal service for political and media purposes.

56. On April 26, 2017, speaking from the White House, Shulkin told media reporters words to the effect that VA was "continuing [its] investigation as to the actions that will result from the management perspective," arising from the aforementioned OIG Interim Summary Report.

57. After April 26, 2017, Wright-Simpson pressured Culpepper to initiate an OAR investigation into Hawkins's conduct to find reasons to remove Hawkins.

58. In or around April or May 2017, OAR personnel determined the investigatory findings and other information in VA's possession at the time was insufficient grounds to support the removal of Hawkins from the federal service.

59. After the event(s) in ¶58, Wright-Simpson and/or other personnel from the Office of the Secretary tasked OAR to keep investigating Hawkins to find cause to remove Hawkins.

60. On May 9, 2017, the U.S. Court of Appeals for the Federal Circuit issued its decision in *Helman*, holding that 38 U.S.C. § 713(e)(2) (2014) and related portions of § 713(e)(3) and § 713(e)(5) violated the Appointments Clause. *Helman v. Dep't of Veterans Affairs*, 856 F.3d 920 (Fed. Cir. 2017).

61. On May 31, 2017, speaking from the White House, Shulkin complained to media reporters about civil service due process requirements, and said words to the effect that "[d]espite the limitations of the existing law," he "recently removed the Washington, D.C. medical director from [his] position," in reference to Hawkins.

62. Hawkins was employed by the VA and had not yet been removed from his employment at the time of Shulkin's statement described in ¶61.

63. In or around June 2017, political appointees at VA communicated to OAR personnel they wanted to remove Hawkins for any reason that OAR could find.

64. In response to the communication referenced in ¶63, career personnel within OAR determined there was insufficient evidence to remove Hawkins.

65. In June 2017, OAR Deputy Director Scott Foster sent an e-mail to his supervisor stating words to the effect that political appointees at VA said they wanted to remove Hawkins "for any reason we can find."

66. Foster's aforementioned June 2017 e-mail stated words to the effect that career OAR personnel determined there was "insufficient evidence" to remove Hawkins.

67. Foster's aforementioned June 2017 e-mail stated words to the effect, "We are setting ourselves up for slam-dunk due process fouls" and "We will lose this case on appeal, and in a very embarrassing way."

68. On June 8, 2017, Vargas interviewed Hawkins regarding allegations of misconduct against him as DCVAMC Director.

69. Vargas interviewed Hawkins on June 8, 2017, acting at the direction of VA leadership to find cause to remove Hawkins.

70. On June 9, 2017, Deputy Under Secretary for Health Operations and Management Steve Young proposed to remove Hawkins from the federal service pursuant to 5 U.S.C. § 7543, for conduct that allegedly occurred between September 2011, and June 8, 2017.

71. The June 9, 2017 proposal to remove Hawkins from the federal service charged Hawkins with "Failure to Exercise Effective Oversight," "Failure to Follow Instructions," and "Failure to Follow Policy," arising from allegations which OAR previously concluded did not warrant Hawkins's removal from the federal service.

72. On June 23, 2017, President Trump signed the Department of Veterans Affairs Accountability and Whistleblower Protection Act of 2017 ("DVAAWPA") into law. Section 201 of the Act,

codified at 38 U.S.C. § 713 (2017), replaced 38 U.S.C. § 713 (2014), and created a new alternative process for removing Senior Executive Service members employed by the VA from the federal service. 38 U.S.C. § 713 (2017) allows VA to remove a Senior Executive "if the Secretary determines that the misconduct or performance of the [Senior Executive] warrants such action." DVAAWPA states that a Court "may set aside any Department action" for evidentiary reasons where the Secretary's decision is "unsupported by substantial evidence." 38 U.S.C. § 713(b)(6)(C) (2017).

73. The text of the DVAAWPA does not specifically identify the standard of proof for the Secretary to use in deciding whether a Senior Executive's "misconduct or performance…warrants" discipline.

74. The text of the DVAAWPA does not afford adversely affected VA Senior Executives a right to an evidentiary name-clearing hearing.

75. The Secretary is required to use a "preponderance of the evidence" standard of proof to decide whether a Senior Executive's "misconduct or performance…warrants" discipline in accordance with DVAAWPA.

76. MSPB regulation 5 C.F.R. § 1201.4(q) defines "preponderance of the evidence" as "[t]he degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue."

77. Applying DVAAWPA to Hawkins's conduct prior to June 23, 2017, retroactively attaches new legal consequences to that completed conduct, impairing Hawkins's rights when he acted and increasing his liability for past conduct.

78. On July 5, 2017, Hawkins responded in writing to the June 9, 2017 proposed removal to the Deciding Official, Acting Principal Under Secretary for Health Dr. Miguel LaPuz, with

evidence and argument showing: that Hawkins's removal was being executed in violation of his constitutional right to pre-removal due process, and that the charges in the proposal could not be sustained by a preponderance of the record evidence.

79. In his July 5, 2017 written reply, Hawkins proffered evidence that Shulkin interfered with the due process rights of Hawkins and others, and argued that his removal was predetermined by Shulkin for political and media purposes.

80. On July 6, 2017, Hawkins responded orally to the June 9, 2017 proposal to LaPuz at 810 Vermont Avenue, Washington, D.C. 20420.

81. After a reasonable opportunity for further investigation or discovery, there likely will be evidentiary support that immediately prior to Hawkins's July 6, 2017 oral reply, Alaigh met with LaPuz and pressured him to remove Hawkins.

82. After a reasonable opportunity for further investigation or discovery, there likely will be evidentiary support that immediately prior to Hawkins's July 6, 2017 oral reply, Shulkin met with LaPuz and pressured him to remove Hawkins.

83. During the July 6, 2017 oral reply, LaPuz stated to Hawkins that he had questions about the record evidence and expressed his need for Hawkins to answer those questions.

84. During the July 6, 2017 oral reply, VA attorney Iris Barber told LaPuz (in the presence of Hawkins) words to the effect that LaPuz should consider giving Hawkins more time to review VA's evidence and then either reconvene at a later date to discuss LaPuz's questions or issue his questions to Hawkins in writing.

85. LaPuz did not state all of his questions to Hawkins during the July 6, 2017 oral reply, and Hawkins did not answer all of those questions.

86. On July 7, 2017, VA issued Corporate Senior Executive Management Office Letter No. 006-17-1 ("CSEMO Letter"). The CSEMO Letter required factfinders to apply a "substantial evidence" standard of proof to all 38 U.S.C. § 713 (2017) actions against Senior Executives.

87. The CSEMO Letter defines "substantial evidence" as "relevant evidence that a reasonable person, considering the record as a whole, might accept as adequate to support a conclusion, even though other reasonable persons might disagree."

88. On July 26, 2017, LaPuz issued a decision sustaining every charge of misconduct and the removal penalty from the June 9, 2017 proposal, to be effective July 28, 2017.

89. LaPuz's July 26, 2017 decision did not address Hawkins's argument that his removal was unlawfully predetermined by Shulkin for political and media purposes.

90. On July 28, 2017, the U.S. Office of Special Counsel ("OSC"), the independent federal agency tasked with enforcing merit systems principles within the federal civil service, requested VA to informally stay Hawkins's removal for fourteen days, so that OSC could investigate whether VA violated Hawkins's Constitutional rights, and committed a prohibited personnel practice, under OSC's jurisdiction per 5 U.S.C. § 1214, when VA issued its proposed removal to Hawkins on June 9, 2017.

91. On July 28, 2017, VA denied OSC's informal request to stay Hawkins's removal.

92. On July 28, 2017, after VA denied its request for an informal stay, OSC filed a motion with the MSPB, requesting a 45-day stay of Hawkins's removal.

93. On July 31, 2017, OSC amended its July 28, 2017 motion for the MPSB to stay Hawkins's removal.

94. As grounds for its stay request, OSC asserted to the MSPB: "OSC has reasonable grounds to believe that the VA issued its proposal to remove Hawkins in violation of 5 U.S.C. §

2302(b)(12) and of [Hawkins's] due process rights under the Fifth Amendment of the U.S. Constitution." In support of that assertion, OSC proffered that it had "received complaints of whistleblower retaliation from two individuals at the VA who were involved in [Plaintiff's] investigation and are familiar with his proposed removal," and that "[b]oth individuals separately alleged that [VA] proceeded with [Hawkins's] proposed removal in ways that violated VA laws, rules and regulations, and [Hawkins's] due process rights." OSC added, "[t]hose individuals further allege that they were disciplined as retaliation for raising these concerns."

95. On August 1, 2017, VA issued a statement to media outlets announcing that VA removed Hawkins from the federal service because he had "failed to provide effective leadership at the medical center."

96. On August 2, 2017, the Acting MSPB Chairman granted OSC's motion to stay and issued an order staying Hawkins's removal, through September 15, 2017.

97. On August 9, 2017, VA issued a press release publicly reacting to the MSPB's stay order. In that press release, VA stated Hawkins was returned to the payroll, "but to an administrative position at the VA headquarters in Washington rather than to a patient-care position at the VA Medical Center." The press release also quoted Shulkin stating: "No judge who has never run a hospital and never cared for our nation's Veterans will force me to put an employee back in a position when he allowed the facility to pose potential safety risks to our Veterans." The release alleged a "new report" that stated "Hawkins violated VA policy by sending sensitive information from his work email to unsecured private email accounts," and stated: "VA will quickly make an assessment of Mr. Hawkins' employment using the new evidence and armed

with the new authorities recently provided by [DVAAWPA] signed into law by President Trump in June."

98. The August 9, 2017 press release referenced in ¶97 remains publicly available on VA's website.

99. In or around August 2017, as reported by the New York Times on August 9, 2017, Shulkin informed "congressional leaders" that he would "initiate new removal proceedings" against Hawkins.

100.   On August 12, 2017, in Bedminster, New Jersey, during a press conference with President Trump and Secretary Shulkin, Trump told media reporters that under DVAAWPA, words to the effect, "David [Shulkin] and his executives can now hold people accountable for doing a poor job and say, 'You're fired.' You do a poor job for our veterans – you're fired."

101.   On or around August 14, 2017, the Wall Street Journal published an editorial encouraging Shulkin to fire Hawkins under the DVAAWPA, codified at 38 U.S.C. § 713 (2017).

102.   On August 14, 2017, Young rescinded the June 9, 2017 proposal to remove Hawkins, which had been issued pursuant to 5 U.S.C. § 7543.

103.   On August 14, 2017, LaPuz rescinded the July 26, 2017 decision to remove Hawkins.

104.   On August 22, 2017, LaPuz issued a new proposal to remove Hawkins from the federal service, "under authority of 38 U.S.C. § 713," for conduct that allegedly occurred between September 2011, and June 8, 2017.

105.   OSC did not have jurisdiction or authority to request the MSPB to stay the removal action brought against Hawkins under 38 U.S.C. § 713 (2017), unlike the prior removal action against Hawkins brought under 5 U.S.C. § 7543.

106.   The August 22, 2017 proposal to remove Hawkins charged Hawkins with allegations arising from the same and similar subject-matter as the June 9, 2017 proposal, with the addition of two charges of misconduct. These two additional charges were not previously included in the prior June 9, 2017 proposed removal, even though at least one of these two charges were based on information in VA's possession prior to June 9, 2017.

107.   The August 22, 2017 proposal to remove Hawkins was issued in accordance with the CSEMO Letter.

108.   LaPuz's August 22, 2017 proposal proposed to remove Hawkins based on the "substantial evidence" standard of proof.

109.   The designated deciding official for the August 22, 2017 proposal was Assistant Secretary for Congressional and Legislative Affairs Brooks Tucker.

110.   Tucker serves at the pleasure of the President of the United States.

111.   Tucker, a political appointee, does not have a property interest in his continued employment as an Assistant Secretary of the VA.

112.   On August 25, 2017, Hawkins requested from VA: copies of the specific pages of evidence upon which each specification in the August 22, 2017 proposal relied; and an extension of time from the initial deadline of August 31, 2017, until September 21, 2017, to submit his response to the August 22, 2017 proposal to Tucker.

113.   On August 31, 2017, VA notified Hawkins that it extended his response deadline until September 5, 2017. VA never responded to Hawkins's request to identify the specific evidence upon which each respective specification of misconduct was based.

114.   On September 5, 2017, Hawkins submitted his written response to the August 22, 2017 proposal to Tucker, with evidence and argument showing that Hawkins's removal was being

executed in violation of his constitutional right to pre-removal due process, and that the charges and specifications in the proposal were not proven by the appropriate evidentiary standard, including that:

a. Charge 1, Specification 1 impermissibly charged Hawkins with strict liability for the DCVAMC's lack of the New Enrollee Appointment Request ("NEAR") list by his subordinates prior to May 2014, despite Hawkins's reasonable lack of knowledge of it, VA-wide failures to monitor the NEAR list, the scope of his job responsibilities, and his reasonable reliance upon his subordinates to do their respective jobs and to ensure required processes were followed.

b. Charge 1, Specification 2 incorrectly charged Hawkins with failing to appropriately discipline his subordinate, Ms. Odeal Scott-Bedford. Hawkins highlighted the proposal's materials-relied upon for proof that although he was not obligated to discipline Scott-Bedford under the circumstances at issue, that he actually so did. Hawkins also submitted a statement from the DCVAMC's Human Resources Officer during the relevant time period, stating that Hawkins did discipline Scott-Bedford, contrary to the specification's assertion otherwise.

c. Charge 1, Specifications 3 and 4 failed under a preponderant evidence standard of proof.

d. Charge 1, Specification 5 was too unclear for Hawkins to provide an informed reply.

e. Charge 1, Specification 6 failed under a preponderant evidence standard of proof.

f. Charge 2 failed incorrectly charged Hawkins with failing to follow instructions by failing to remove Scott-Bedford from acting as DCVAMC Associate Director. Hawkins argued charge failed because VA could not prove that he received or violated a clear instruction

from leadership that he was required to follow regarding Scott-Bedford's role as Acting Associate Director.

g. Charge 3 incorrectly charged Hawkins with failing to immediately remove two DCVAMC employees when their nursing licenses expired, allegedly in violation of VA policy. Hawkins explained in detail that he did follow VA policy in response to learning that the two nurses had "expired" licenses. Hawkins also informed Tucker that both nurses were still employed at the DCVAMC, undercutting the seriousness of the allegations against Hawkins in Charge 3.

h. Charge 4, Specification 1 incorrectly charged Hawkins with lacking candor when he testified that he had disciplined Scott-Bedford under particular circumstances, as the evidence proved Hawkins had actually disciplined Scott-Bedford.

i. Charge 4, Specification 2 was too unclear for Hawkins to provide an informed reply.

j. Charge 5, which charged Hawkins, in part, with using personal e-mail for VA business in violation of VA Memorandum VAIQ #7581492, failed under a preponderant evidence standard of proof and charged Hawkins disparately to Shulkin and other senior VA officials who Hawkins knew to use personal e-mail accounts for VA business.

k. Charge 6 incorrectly charged Hawkins with retaliating against Mr. Bennie Williams for protected whistleblower activity, because Williams had not engaged in protected whistleblower activity and VA could not prove that Hawkins had detailed Williams in retaliation for the allegedly protected activity.

115.    Hawkins also argued in his written reply that VA should apply the legal framework that "was in place at the time of all the conduct at issue," which allegedly occurred between

18

September 2011, and June 8, 2017, and that applying a standard of proof less than "preponderance of the evidence" would violate Hawkins's Constitutional right to due process.

116. The evidence Hawkins enclosed with this September 5, 2017 response to Tucker included a sworn declaration from Culpepper, attesting, in part, to Shulkin's statements and actions showing he predetermined disciplinary action against Hawkins and other VA employees for political and media purposes in violation of Hawkins's constitutional and statutory due process rights.

117. Hawkins was not permitted to deliver an oral reply to the August 22, 2017 proposed removal, and he did not give any such oral reply to any VA official.

118. On September 13, 2017, Tucker issued an initial decision pursuant to 38 U.S.C. § 713 and the CSEMO Letter, sustaining the August 22, 2017 proposal and removing Hawkins from the federal service, effective September 16, 2017.

119. The September 13, 2017 initial decision sustained on a substantial evidence standard of proof the August 22, 2017 proposal to remove Hawkins from the federal service.

120. The September 13, 2017 initial decision states, in part:

   a. After a careful review of the Proposed Removal and the documentary evidence supporting the proposed action, as well as your written response to the Proposed Removal, I find that substantial evidence supports the proposed charges;

   b. In reaching my decision, I have considered the charges against you and your response; and

   c. As stated above, after carefully reviewing the Proposed Removal and evidence file as well as your written and oral responses, I sustain all charges and specifications contained in the Proposed Removal.

121.    The September 13, 2017 initial decision did not address Hawkins's arguments or evidence from his September 5, 2017 response to the August 22, 2017 proposal, including those summarized above in ¶114.

122.    The September 13, 2017 initial decision did not connect its conclusions to record evidence.

123.    Hawkins was removed from the federal service effective September 16, 2017.

124.    Hawkins did not grieve the September 13, 2017 initial decision, making that decision VA's final decision, pursuant to VA's procedures, and subject to judicial review in accordance with 38 U.S.C. § 713(b)(4)-(6).

125.    38 U.S.C. § 713 (2017) did not entitle Hawkins to an evidentiary name-clearing hearing on the September 13, 2017 removal decision.

126.    On or about September 16, 2017, VA placed within Hawkins's personnel file a Standard Form 50, Notification of Personnel Action ("SF-50") effecting his removal for misconduct.

127.    Records within Hawkins's Official Personnel Folder are available to any potential federal agencies to which he may apply for employment.

128.    On September 20, 2017, VA issued a public press release titled, "VA Removes Former D.C. Medical Center Director." That press release stated, in its entirety:

WASHINGTON — Today, the U.S. Department of Veterans Affairs (VA) announced that it has fired former Washington, D.C., VA Medical Center Director Brian Hawkins for his failure to provide effective leadership to the D.C. Medical Center.

The department undertook this action using authorities provided by the VA Accountability Act, which the president signed into law in June. Hawkins was notified in late August that he was being proposed for removal.

"We at VA will use the authorities available to ensure our Veterans get the highest quality service and care possible," said VA Secretary Dr. David J. Shulkin. "This is the right decision for Veterans in D.C., and employees at the medical center, and underscores our commitment to hold employees accountable if they fail to do their jobs or live up to VA's values."

VA initiated the latest action after the VA Office of Inspector General issued a new report finding that Hawkins violated VA policy by sending sensitive VA information from his work email to unsecured private email accounts.

129.   The press release referenced in ¶128 remains publicly available on VA's website.

130.   After a reasonable opportunity for further investigation or discovery, there likely will be evidentiary support that VA has disseminated unfavorable and stigmatizing information concerning Hawkins's character to certain Congressional committees, representatives, and staff. This has the impact of further tarnishing Hawkins's personal and professional reputation.

131.   VA's actions related to the September 13, 2017 removal decision adversely impacted Hawkins's post-employment reputation.

132.   VA's actions related to the September 13, 2017 removal decision stigmatized Hawkins.

133.   Mr. Hawkins's chosen profession is to work in a Senior Executive Service, patient-care position at a VA Medical Center.

134.   VA's actions related to the September 13, 2017 removal decision have prevented Hawkins from working in his chosen profession.

135.   On or around May 14, 2019, Acting Principal Under Secretary for Health Dr. Stephen Lieberman issued a notice to Hawkins: (1) rescinding the Notice of Proposed Removal dated August 22, 2017; (2) rescinding the Initial Decision dated September 13, 2017; (3) reassigning Hawkins from his DCVAMC position to a Senior Advisor position; and (4) directing Hawkins to return to duty on June 10, 2019.

136.   Effective upon Lieberman's May 14, 2019 notice to Hawkins, VA was required to expunge all records of the rescinded removal actions from Hawkins's Official Personnel Folder.

137.   VA has not expunged all records of the rescinded removal actions from Hawkins's Official Personnel Folder, including at least one SF-50 that states Hawkins was removed for misconduct.

138.   Lieberman's May 14, 2019 notice to Hawkins stated "back pay shall be provided" to Hawkins.

139.   Effective upon Lieberman's May 14, 2019 notice to Hawkins, Hawkins was entitled to full compensation and benefits for his employment with VA for the period of September 16, 2017, through May 14, 2019.

140.   On May 14, 2019, VA filed a motion with this Court stating that Lieberman's May 14, 2019 notice to Hawkins "stated that back pay will be provided," and stating Hawkins would be reinstated to a position in the Senior Executive Service "with appropriate back pay."

141.   VA personnel had a duty to initiate and/or process payment to Hawkins full compensation and benefits for his employment with VA for the period of September 16, 2017, through May 14, 2019.

142.   VA has not paid Hawkins full compensation and benefits for his employment with VA for the period of September 16, 2017, through May 14, 2019.

143.   Effective upon Lieberman's May 14, 2019 notice to Hawkins, Hawkins was entitled to full compensation and benefits for his employment with VA from May 14, 2019, until his VA employment terminated on June 12, 2019.

144.   VA has not paid Hawkins full compensation and benefits for his employment with VA from May 14, 2019, until his VA employment terminated on June 12, 2019.

145.   The Senior Advisor position to which Lieberman's May 14, 2019 notice reassigned Hawkins was not a patient-care position at a VA Medical Center.

146.    Beginning on June 10, 2019, and continuing through June 12, 2019, Hawkins reported for duty as a VA employee.

147.    On June 12, 2019, Hawkins resigned from VA and from the federal service effective that same day.

148.    At the time Hawkins resigned from VA on June 12, 2019, he had reason to believe VA would never reassign him to a Senior Executive Service, patient-care position at a VA Medical Center.

149.    Hawkins is entitled to full compensation and benefits for the three days of VA service he performed from June 10-12, 2019.

150.    VA has not paid Hawkins full compensation and benefits for the three days of VA service he performed from June 10-12, 2019.

151.    All VA employees, except Hawkins, who performed VA service from June 10-12, 2019, were paid for that service either through electronic funds transfer on June 28, 2019, or by check on July 3, 2019.

152.    On July 23, 2018, Robert Wilkie was confirmed by the U.S. Senate as Secretary of the VA and subsequently sworn into office.

153.    Hawkins remains adversely affected by the September 13, 2017 removal decision.

### FACTS RELATED TO FOIA CLAIM

154.    On October 19, 2017, Hawkins sent a FOIA request to VA, requesting certain e-mail records. Those requested e-mail records included e-mails about VA business between Shulkin and other senior VA employees' (Thomas Bowman, Vivieca Wright-Simpson, Peter O'Rourke, Brooks Tucker, Poonam Alaigh, and Brigette Frantz) sent to/from Shulkin's personal, non-government e-mail account.

155.    Shulkin conducted VA business from his personal, non-government e-mail account, drshulkin@aol.com, prior to and after August 22, 2017.

156.    Shulkin sent and received hundreds of e-mails containing VA sensitive information from his non-government e-mail account, drshulkin@aol.com.

157.    Shulkin conducted VA business from his personal, non-government e-mail account, secshulkin@gmail.com, prior to and after August 22, 2017.

158.    Shulkin sent and received hundreds of e-mails containing VA sensitive information from his non-government e-mail account, secshulkin@gmail.com.

159.    Use of a personal e-mail account or the use of a personal e-mail system to conduct VA business is prohibited by VA Memorandum VAIQ #7581492.

160.    Shulkin and other senior VA employees conducted VA business when sending e-mails from their government e-mail accounts to Shulkin's personal, non-government e-mail account, prior to and after August 22, 2017.

161.    One of the stated reasons in the August 22, 2017 proposal to removal Hawkins was Hawkins's alleged violation of VA Memorandum VAIQ #7581492.

162.    On October 19, 2017, VA received Hawkins combined FOIA and Privacy Act request.

163.    On December 5, 2017, VA notified Hawkins that it had routed his October 19, 2017 request to several offices. The December 5, 2017 notice did not state the scope of any documents VA would produce or the exemptions VA would claim with respect to any withheld documents in response to Hawkins's October 19, 2017 request.

164.    VA's December 5, 2017 notice assigned FOIA number 18-01834-FP to requests for information from the Office of the Executive Secretary.

165.    VA's December 5, 2017 notice assigned FOIA number 18-01542-FP to requests for information from the Veterans Health Administration.

166.    VA's December 5, 2017 notice assigned FOIA number 18-01844-FP to requests for information from the Office of Accountability and Whistleblower Protection.

167.    VA's December 5, 2017 notice assigned FOIA number 18-01845-FP to requests for information from the Office of Assistant Secretary for Congressional and Legislative Affairs.

168.    VA's December 5, 2017 notice assigned FOIA number 18-01879-FP to requests for information from the DCVAMC.

169.    On December 11, 2017, the Veterans Health Administration, as sub-agency of VA, notified Hawkins that it had received part of his October 19, 2017 request for records. This December 11, 2017 notice stated, "We will search for records responsive to your FOIA request…When we have completed our search for records responsive to your FOIA request, we will send you another letter telling you the results of that search and our next step in processing your request." The December 11, 2017 notice did not state the scope of any documents VA would produce or the exemptions VA would claim with respect to any withheld documents in response to Hawkins's October 19, 2017 request.

170.    On December 22, 2017, Hawkins filed his Complaint.

171.    On March 28, 2018, Shulkin resigned from his position as VA Secretary.

172.    On May 30, 2018, VA issued a response FOIA number 18-01834-FP, denying Hawkins's request for e-mails between O'Rourke and drshulkin@aol.com, and e-mails between Bowman and drshulkin@aol.com, citing Exemption 6 of the FOIA.

173.    On or around June 29, 2018, Hawkins submitted an administrative appeal of FOIA number 18-01834-FP, and a request for mediation to resolve the appeal.

174.    On or around October 12, 2018, VA issued a decision granting Hawkins's administrative appeal of FOIA number 18-01834-FP, and remanded the case back to the FOIA Officer for the Office of the Secretary to conduct an appropriate search, process the responsive information, and issue a subsequent initial agency decision.

175.    VA has not provided a full and complete response to Hawkins's FOIA request.

## CLAIMS FOR RELIEF

## PROPERTY TAKING IN VIOLATION OF FIFTH AMENDMENT DUE PROCESS

### Count I - 38 U.S.C. § 713 is Unconstitutional
### (Against All Defendants)

176.    Hawkins re-alleges and incorporates by reference the allegations contained in ¶¶1-153, *supra*.

177.    "[T]he Due Process Clause provides that certain substantive rights – life, liberty, and property – cannot be deprived except pursuant to constitutionally adequate procedures." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985).

178.    The text of 38 U.S.C. § 713 (2017) allows VA to remove its Senior Executive Service employees with a property interest in their continued employment from the federal service with minimal pre-taking process.

179.    Employees removed under 38 U.S.C. § 713 (2017) are not statutorily entitled to *de novo* review or otherwise entitled to robust statutory post-taking process.

180.    Employees removed under 38 U.S.C. § 713 (2017) are not statutorily entitled to an evidentiary name-clearing hearing.

181.    Because 38 U.S.C. § 713 (2017) denies adversely affected VA Senior Executives any meaningful post-taking review, the statute is unconstitutional under the Due Process Clause of the Fifth Amendment to the U.S. Constitution.

## Count II – Predetermination
### (Against Defendants VA and Wilkie)

182.   Hawkins re-alleges and incorporates by reference the allegations contained in ¶¶1-153, *supra*.

183.   A tenured federal employee has the right to notice and an opportunity to respond to the official designated to decide whether to remove the employee from federal service. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985).

184.   The official designated to decide whether to remove an employee from federal service must have the discretion to actually make that decision. *Id.*, at 543.

185.   Shulkin predetermined Hawkins's removal, prior to Hawkins's September 5, 2017 written response to the August 22, 2017 proposed removal.

186.   Tucker predetermined Hawkins's removal, prior to Hawkins's September 5, 2017 written response to the August 22, 2017 proposed removal.

187.   By predetermining Hawkins's removal prior to his September 5, 2017 written response to the August 22, 2017 proposed removal, VA violated Hawkins's right to Due Process under the Fifth Amendment to the U.S. Constitution.

## Count III – DVAAWPA Not Retroactive
### (Against Defendants VA and Wilkie)

188.   Hawkins re-alleges and incorporates by reference the allegations contained in ¶¶1-153, *supra*.

189.   DVAAWPA, codified at 38 U.S.C. § 713 (2017), is not retroactive to conduct that occurred prior to its enactment on June 23, 2017. *Landgraf v. USI Film Products*, 511 U.S. 244 (1994).

190.    Retroactive application of 38 U.S.C. § 713 (2017) to pre-June 23, 2017 conduct would

"attach new legal consequences" to that conduct. *Martin v. Hadix*, 527 U.S. 343, 358 (1999)

(citing *Landgraf*, at 270).

191.    LaPuz proposed Hawkins's removal on August 22 2017, pursuant to 38 U.S.C. § 713

(2017), charging that Hawkins's alleged pre-June 23, 2017 conduct warranted removal from

the federal service.

192.    Tucker issued his September 13 2017 decision to remove Hawkins pursuant to 38 U.S.C.

§ 713 (2017), sustaining the charges that Hawkins's alleged pre-June 23, 2017 conduct

warranted removal from the federal service.

193.    By retroactively applying 38 U.S.C. § 713 (2017) to remove Hawkins for his alleged pre-

June 23, 2017 conduct, VA violated Hawkins's right to due process under the Fifth

Amendment of the U.S. Constitution by.

### Count IV – Improper Use of Substantial Evidence Standard of Proof
### (Against Defendants VA and Wilkie)

194.    Hawkins re-alleges and incorporates by reference the allegations contained in ¶¶1-153,

*supra*.

195.    Adjudicating a matter pursuant to the correct standard of proof is integral to providing an

individual with the process he is due under the Fifth Amendment of the U.S. Constitution.

*Santosky v. Kramer*, 455 U.S. 745, 757 (1982) (citing *Mathews v. Eldridge*, 424 319, 344

(1976)).

196.    Because the standard of proof must be correctly calibrated in advance of an adjudication,

"only a new hearing can remedy" an incorrect calibration. *Reynoso-Rodriguez v. Napolitano*,

E.D. Cal. No. CIV S-08-321 MCE KJM, 2009 WL 3157477 (Sept. 28, 2009) (interpreting

*Addington v. Texas*, 441 U.S. 418, 233 (1979)).

197.    Substantial evidence is an unconstitutional standard of proof for a factfinder to apply in deciding to remove a tenured federal employee from the federal service. *See Multimax, Inc. v. Fed. Aviation Admin.*, 231 F.3d 882, 798 (D.C. Cir. 2000).

198.    LaPuz proposed Hawkins's removal on August 22 2017, pursuant to 38 U.S.C. § 713 (2017), improperly based on a substantial evidence standard of proof.

199.    Tucker issued his September 13, 2017 decision to remove Hawkins pursuant to 38 U.S.C. § 713 (2017), improperly based on a substantial evidence standard of proof.

200.    In 2018, VA unconstitutionally terminated over 3,000 employees utilizing 38 U.S.C. §§ 713, 714, improperly based on a substantial evidence standard of proof, and continues so today.

201.    By removing Hawkins based on a substantial evidence standard of proof, VA violated Hawkins's right to Due Process under the Fifth Amendment of the U.S. Constitution.

### Count V – Withholding Compensation and Benefits Due
### (Against Defendants VA and Wilkie)

202.    Hawkins re-alleges and incorporates by reference the allegations contained in ¶¶1-153, *supra*.

203.    5 U.S.C. §§ 5382, 5383 entitles VA members of the Senior Executive Service "shall be paid" consistent with U.S. Office of Personnel Management ("OPM") regulations.

204.    Because of the September 13, 2017 removal decision, VA processed a SF-50 effective September 16, 2017, terminating Hawkins's VA employment and federal service.

205.    VA placed the SF-50 terminating Hawkins's VA employment and federal service into Hawkins's Official Personnel Folder.

206.    Lieberman's May 14, 2019 notice to Hawkins rescinded the September 13, 2017 removal decision.

207.   VA issued a SF-50 on May 28, 2019, with a retroactive effective date of September 16, 2017, cancelling the SF-50 that terminated Hawkins's VA employment and federal service. In effect, as of May 28, 2019, Hawkins was made a VA member of the Senior Executive Service retroactively from September 16, 2017, through May 28, 2019, and going forward.

208.   On Monday, June 10, 2019, Hawkins reported to duty as a VA member of the Senior Executive Service in his new Senior Advisor position. Hawkins then performed three days of work and resigned effective Wednesday, June 12, 2019.

209.   Hawkins was a VA Senior Executive Service employee for the period of September 16, 2017, through June 12, 2019, and entitled to full compensation and benefits for that period of employment consistent with OPM regulations.

210.   VA has not paid Hawkins any compensation or benefits for the September 16, 2017, through June 12, 2019 period.

211.   Since May 14, 2019, Hawkins has cooperated with all VA requests related to processing his pay and has asked VA multiple times why he has not been paid.

212.   VA has not explained to Hawkins why it has not given him full compensation and benefits owed, and VA has not afforded Hawkins notice and opportunity to respond to VA's undisclosed reasons for not paying Hawkins the full compensation and benefits it owes him.

213.   By withholding Hawkins's full compensation and benefits without explanation, VA has deprived Hawkins of his property right in full compensation and benefits for his VA employment for the period of September 16, 2017, through June 12, 2019, without due process in violation of the Fifth Amendment to the U.S. Constitution.

## LIBERTY TAKING IN VIOLATION OF FIFTH AMENDMENT DUE PROCESS

### Count VI – Fifth Amendment Due Process Violation
#### (Against Defendants VA and Wilkie)

214.    Hawkins re-alleges and incorporates by reference the allegations contained in ¶¶1-153, *supra.*

215.    A liberty interest is implicated when an adverse government action imposes a stigma or disability that forecloses pursuit of other government jobs or a broad range of opportunities, so as to interfere with the employee's right to follow his chosen profession.

216.    At all times during his VA employment, Hawkins had a liberty interest in his good name, post-employment reputation, honor, and integrity.

217.    The September 13, 2017 removal decision negatively altered Hawkins's employment status by removing him from his VA employment and from the federal service.

218.    The September 13, 2017 removal decision sustained charges against Hawkins for poor performance, unprofessional conduct, whistleblower reprisal, and dishonesty, that were subsequently recorded in his Official Personnel Folder.

219.    After a reasonable opportunity for further investigation or discovery, there likely will be evidentiary support that the sustained charges against Hawkins were disseminated to Congressional committees and personnel.

220.    VA made public accusations related to the September 13, 2017 removal decision that damaged Hawkins's standing and association in his personal and professional communities, including: Shulkin's press release statement that Hawkins's conduct posed "potential safety risks to our Veterans," VA's two press release statements that it intended to remove Hawkins based on the allegation he compromised "sensitive information," and Shulkin's press release

statement that removing Hawkins "underscores our commitment to hold employees accountable if they fail to do their jobs or live up to VA's values."

221.    VA's conduct related to the September 13, 2017 removal decision therefore deprived Hawkins of his liberty interest in his good name, post-employment reputation, honor, and integrity.

## PROPERTY TAKING IN VIOLATION OF FIFTH AMENDMENT TAKINGS CLAUSE

### Count VII – Property Taking Without Just Compensation in Violation of Fifth Amendment Takings Clause
### (Against All Defendants)

222.    Hawkins re-alleges and incorporates by reference the allegations contained in ¶¶1-153, *supra*.

223.    The Takings Clause of the Fifth Amendment to the U.S. Constitution provides that "private property [shall not] be taken for public use, without just compensation."

224.    5 U.S.C. §§ 5382, 5383 require VA members of the Senior Executive Service "shall be paid" consistent with U.S. Office of Personnel Management ("OPM") regulations.

225.    Hawkins was a VA Senior Executive Service employee for the period of September 16, 2017, through June 12, 2019, and entitled to full compensation and benefits for that period of employment consistent with OPM regulations.

226.    In the approximately five months since Lieberman's May 14, 2019 notice announcing rescission of the removal decision, and approximately four months since Hawkins's June 12, 2019 resignation from his position, VA has not paid Hawkins compensation or benefits for any portion of the September 16, 2017, through June 12, 2019 period.

227.    By withholding Hawkins's full compensation and benefits for almost four months since Hawkins last separated from his VA employment, and without VA's explanation, VA has taken

Hawkins's private property right of full compensation and benefits for his VA employment for the period of September 16, 2017, through June 12, 2019.

228. VA has not given Hawkins just compensation – indeed, it has not given him any compensation – for taking his private property right.

229. After a reasonable opportunity for further investigation or discovery, there likely will be evidentiary support that Hawkins's private property was taken for public use.

## JUDICIAL REVIEW PURSUANT TO 38 U.S.C. § 713

### Count VIII – Judicial Review Pursuant to 38 U.S.C. § 713
### (Against Defendants VA and Wilkie)

230. Hawkins re-alleges and incorporates by reference the allegations contained in ¶¶1-153, *supra*.

231. Hawkins's September 5, 2017 written reply to explained why and on what basis the August 22, 2017 proposed removal erred. *See Public Citizen, Inc. v. Fed. Aviation Comm'n.*, 988 F.2d 186, 197 (D.C. Cir. 1993) (citing *Home Box Office, Inc. v. Fed. Commc'n Comm'n*, 567 F.2d 9, 35 n. 58 (D.C. Cir. 1977)).

232. If true, Hawkins's September 5, 2017 written reply arguments and evidence would have required Tucker to not sustain all the charges in the August 22, 2017 proposed removal.

233. Tucker reviewed the written statement from Culpepper that Hawkins provided in his September 5, 2017 written response to the August 22, 2017 proposed removal.

234. The entirety of Culpepper's written statement (including his testimony regarding ¶¶31-52, *supra*) is part of the record on review before this Court.

235. Hawkins did not grieve VA's September 13, 2017 initial decision, making it "final and conclusive" pursuant to 5 U.S.C. § 713(b)(4).

236. Hawkins is adversely affected by VA's September 13, 2017 final decision to terminate his employment, and is entitled to judicial review of such decision pursuant to 38 U.S.C. § 713(b)(5).

237. VA's September 13, 2017 final decision is arbitrary, capricious, or an abuse of discretion, because it did not give reasoned analysis to Hawkins's arguments or evidence from his September 5, 2017 response to the August 22, 2017 proposal, or otherwise explain why Tucker rejected them.

238. VA's September 13, 2017 final decision is arbitrary, capricious, or an abuse of discretion, because VA states it removed Hawkins, in part, for violating VA Memorandum VAIQ #7581492, when Shulkin did so routinely by using his personal e-mail account to conduct government business.

239. VA's September 13, 2017 final decision is arbitrary, capricious, or an abuse of discretion, because its stated reasons for removing Hawkins were pretext.

240. VA's September 13, 2017 final decision is arbitrary, capricious, or an abuse of discretion, because it did not connect its findings to evidence.

241. VA's September 13, 2017 final decision is arbitrary, capricious, or an abuse of discretion, because it sustains charges that run counter to the evidence.

242. VA's September 13, 2017 final decision is arbitrary, capricious, or an abuse of discretion, because relied upon factors Congress did not intend VA to consider when removing employees.

243. VA's September 13, 2017 final decision is not supported by substantial evidence.

### Count IX – Decision Not in Accordance With Law (Predetermination)
### (Against Defendants VA and Wilkie)

244.   Hawkins re-alleges and incorporates by reference the allegations contained in ¶¶1-153, *supra*.

245.   A tenured federal employee has the right to notice and an opportunity to respond to the official designated to decide whether to remove the employee from federal service. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985).

246.   The official designated to decide whether to remove an employee from federal service must have the discretion to actually make that decision. *Id.*, at 543.

247.   Shulkin predetermined Hawkins's removal, prior to Hawkins's September 5, 2017 written response to the August 22, 2017 proposed removal.

248.   Tucker predetermined Hawkins's removal, prior to Hawkins's September 5, 2017 written response to the August 22, 2017 proposed removal.

249.   The removal decision is not in accordance with law because VA deprived Hawkins of his Constitutional right to due process by predetermining his removal prior to his September 5, 2017 written response to the August 22, 2017 proposed removal.

### Count X – Decision Not in Accordance With Law (DVAAWPA Not Retroactive)
### (Against Defendants VA and Wilkie)

250.   Hawkins re-alleges and incorporates by reference the allegations contained in ¶¶1-153, *supra*.

251.   DVAAWPA, codified at 38 U.S.C. § 713 (2017), is not retroactive to conduct that occurred prior to its enactment on June 23, 2017. *Landgraf v. USI Film Products*, 511 U.S. 244 (1994).

252.   Retroactive application of 38 U.S.C. § 713 (2017) to pre-June 23, 2017 conduct would "attach new legal consequences" to that conduct. *Martin v. Hadix*, 527 U.S. 343, 358 (1999) (citing *Landgraf*, at 270).

253.   LaPuz proposed Hawkins's removal on August 22 2017, pursuant to 38 U.S.C. § 713 (2017), charging that Hawkins's alleged pre-June 23, 2017 conduct warranted removal from the federal service.

254.   Tucker issued his September 13 2017 decision to remove Hawkins pursuant to 38 U.S.C. § 713 (2017), sustaining the charges that Hawkins's alleged pre-June 23, 2017 conduct warranted removal from the federal service.

255.   The removal decision is not in accordance with law because VA violated Hawkins's right to due process under the Fifth Amendment of the U.S. Constitution by retroactively applying 38 U.S.C. § 713 (2017) to remove Hawkins for his alleged pre-June 23, 2017 conduct.

**Count XI – Decision Not in Accordance With Law (Substantial Evidence Standard of Proof Violated Statutory Due Process)**
**(Against Defendants VA and Wilkie)**

256.   Hawkins re-alleges and incorporates by reference the allegations contained in ¶¶1-153, *supra*.

257.   38 U.S.C. § 713 (2017) requires the Secretary of the VA to apply preponderance of the evidence standard of proof to decide whether a Senior Executive's "misconduct or performance...warrants" discipline. *See Steadman v. Sec. Exch. Comm'n*, 450 U.S. 91, 95 (1981); *Sea Island Broadcasting Corp. of S.C. v. Fed. Commc'n Comm'n*, 627 F.2d 240, 243 (D.C. Cir. 1980), *cert. denied*, 449 U.S. 834 (1980).

258.   LaPuz proposed Hawkins's removal on August 22 2017, pursuant to 38 U.S.C. § 713 (2017), improperly based on a substantial evidence standard of proof.

259. Tucker issued his September 13 2017 decision to remove Hawkins pursuant to 38 U.S.C. § 713 (2017), improperly based on a substantial evidence standard of proof.

260. The removal decision is not in accordance with law because VA violated Hawkins's right to due process under 38 U.S.C. § 713 (2017) by removing him based on a substantial evidence standard of proof.

## FREEDOM OF INFORMATION ACT CLAIM

### Count XII – Failure to Release Non-Exempt Responsive Records - 5 U.S.C. § 552 (Against Defendant VA)

261. Hawkins re-alleges and incorporates by reference the allegations contained in ¶¶154-175, *supra*.

262. Under 5 U.S.C. § 552(a)(3), agencies must disclose, upon request, all non-exempt records not already subject to disclosure under paragraphs (a)(1) and (a)(2). The agency must make the records "promptly available to any person" as long as the request "reasonably describes such records." *Id.* § 552(a)(3).

263. Under 5 U.S.C. § 552(a)(6)(i), agencies must "determine within 20 days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of any such request whether to comply with such request and shall immediately notify the person making such request of…such determination and the reasons therefor."

264. "In order to make a 'determination' within the statutory time periods and thereby trigger the administrative exhaustion requirement, the agency…must at least indicate within the relevant time period the scope of the documents it will produce and the exemptions it will claim with respect to any withheld documents." *Citizens for Responsibility and Ethics in Washington v. Federal Election Commission*, 711 F.3d 180, 182-83 (D.C. Cir. 2013).

265.    Hawkins submitted a FOIA request to VA that reasonably described the records requested. In particular, Hawkins requested e-mails between Shulkin and other senior VA employees' government e-mail accounts to and from Shulkin's personal e-mail account.

266.    VA has not provided Hawkins all documents responsive to his October 19, 2017 request.

267.    Hawkins has thus exhausted his administrative remedies for FOIA numbers 18-01834-FP, 18-01542-FP, 18-01844-FP, 18-01845, and 18-01879-FP.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Brian Hawkins, by and through counsel, prays this Court enter judgment in his favor as follows:

1.  Set aside the September 13, 2017 decision removing Hawkins from the federal service.

2.  Award Hawkins full compensation and benefits for his September 16, 2017, through June 12, 2019, VA employment.

3.  Compel VA personnel to initiate and/or process Hawkins's full compensation and benefits for his September 16, 2017, through June 12, 2019 VA employment.

4.  Declare VA's conduct removing Hawkins from the federal service to be unlawful and unconstitutional.

5.  Declare VA's conduct withholding Hawkins's full pay and compensation for his full compensation and benefits for his September 16, 2017, through June 12, 2019 VA employment to be unlawful and unconstitutional.

6.  Declare 38 U.S.C. § 713 (2017) unconstitutional.

7.  Compel VA to produce to Hawkins the records sought in FOIA numbers 18-01542-FP, 18-01844-FP, 18-01845, and 18-01879-FP.

8.  Award Hawkins his costs and attorney's fees.

9. Grant other such relief as this Court deems just and proper.

Date:   October 3, 2019

Respectfully submitted,

_____

Christopher J, Keeven #993971
James P. Garay Heelan #997083
Shaw, Bransford & Roth, P.C.
1100 Connecticut Avenue, NW, Suite 900
Washington, D.C. 20036
Tel:    202-463-8400
Fax:    202-833-8082

*Counsel for Plaintiff Brian Hawkins*